Green, J.
delivered the opinion of the court.
The bill alledges that complainant became surety for one *544 James Smith in a note for $1030, payable to Robert Tait; that after the debt became due, Robert Tait applied to complainant for payment, which was not made, but complainant told Tait that he must not leave Nashville until the matter was settled. In a day or two afterwards Tait was at complainant’s house and told him that the matter with Smith was arranged, and in a few days thereafter died. Complainant saw Smith a . short time afterwards and enquired of him how the matter had been settled, and was informed by him that John Tait, the defendant, had agreed to give him time to pay the note, he, Smith, having placed in said John Tait’s hands claims for collection, which were to be applied in discharge of the note — Smith has become insolvent.
■ The answer of John Tait, the executor, states that after the death of Robert Tait, he found among his papers the note for $1030, mentioned in the bill, and a due-bill for $162. As to the attempted arrangement with Robert Tait, and as to whether he agreed to give Smith time, the defendant has no knowledge, information or belief, but there is no evidence remaining of any consideration for such an agreement. The defendant denies that he gave Smith time otherwise than by simply delaying to proceed against him by suit as long as he thought himself justifiable in so doing. James Smith states in his deposition, that after the note became due, Robert Tait called on him at Nashville, and demanded a settlement of their affairs, proposing to indulge him provided he would give his note for a certain amount of interest over and above what is allowed by law.
The money Smith had borrowed of Tait consisted of Union Bank notes payable at Philadelphia. These notes having fallen in value, Tait demanded that Smith should include in the proposed note fifteen per cent, exchange. To this Smith objected as unjust, and Tait left him, but afterwards returned and informed him that he had been to see G. G. Washington, who had directed him to have the business closed forthwith, as he would no longer be accountable for the money.
Tait then threatened that if Smith did not agree to give him a note for the interest and exchange, as above stated, he would *545 forthwith bring suit. Rather than be sued, Smith submitted to Tait’s terms. The complainant knew nothing of this arrangement at that time. Upon this statement of the case, the question is whether the complainant, as surety for Smith, is released from his obligation, by reason of the transactions between Smith the principal, and Tait the creditor.
In 1st Story’s Equity, sec. 325, it is laid down, “that if a creditor does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law, at all events in equity.”
“It is upon this principle,” says the same author in section 326, “that if a creditor without any communication with the surety and assent on his part, should stipulate in a binding manner, upon sufficient consideration, for further delay and postponement of the day of payment of the debt, that will operate in equity as a discharge of the surety.” In this case the bill, alledges that complainant told Tait “he must not leave Nashville until the matter was settled.”
In a day or two afterwards, Tait told complainant the matter was adjusted. Smith proves that Tait told him he had been to see the complainant who had directed to have the business closed forthwith, as he would no longer be accountable for the money. Smith then executed his note for fifteen per cent, exchange and interest, and Tait agreed to wait. Washington knew nothing of this arrangement. The allegation of the bill is fully sustained by the proof, and the deposition of Smith is corroborated by the fact stated in the answer of the executor, that he found among Tait’s papers a due-bill on Smith for $162. This note amounts to something more than the fifteen per cent exchange, which Smith says he agreed to give, together with some amount of interest over and above what is allowed by law. The $1030 note would bear six per cent interest, and the amount agreed to be given beyond that in addition to the fifteen per cent, would probably be small, making the sum for *546 which Smith would probably execute his note, correspond with the $162 due-bill, and thus making the admission in the answer, of the existence of that note, corroborate the truth of Smith’s evidence.
The question then is, was this a binding contract? And of tbi« there can be no doubt. Tait had loaned Smith Union Bank notes payable at Philadelphia, and it was the understanding of the parties that the debt was to be paid in the same description of money. These had greatly depreciated in value, and Tait insisted on a note for fifteen per cent, the difference between their value at that time and when he made the loan. Smith gave his note with this understanding, and Tait agreed to wait.
If this is nota binding contract, it is difficult to perceive how a contract for delay of payment can be rendered obligatory. It is not only a binding contract, but it is made in opposition to Washington’s request and earnest injunction upon him not to leave Nashville until the matter was settled.
Washington had a right to come into a court of equity to compel Smith to exonorate him from his liability by paying the debt. 1 Story’s Eq. sec. 327. But by his contract for delay, Tait suspended his own remedy, and as the surety could only be subrogated to the rights of the creditor, the principal debtor would have the same equities against him as against the creditor; McLemore vs. Powell, 12 Wheat’s Rep. 557. We are of opinion, therefore, that the decree be affirmed.